UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIE DAVID IVORY,

        Plaintiff,        Case No. 2:10-cv-299

v.        Honorable R. Allan Edgar

UNKNOWN BASTIAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed as frivolous and for failure to state a claim.

**Discussion**

I.     Factual allegations

Plaintiff Willie David Ivory presently is incarcerated in administrative segregation at the Baraga Maximum Correctional Facility (AMF). He sues the following AMF officials: Correctional Officers (unknown) Bastian, (unknown) Hemmila, (unknown) Dewar, and (unknown) Charles; Sergeant (unknown) Beauchamp; Food Service Director (unknown) Barry; and Warden Gary Capello.

Plaintiff filed a 19-page, handwritten complaint containing sweeping allegations of retaliation, conspiracy and cruel and unusual punishment. A sample portion of the complaint states as follows:

> I believe that each of these staff members, as well as other staff who has [sic] simply harassed me for the most part, were given instructions to issue whatever abuse & mistreatment that they can upon me, what makes me so sure of that, is that most of the time their abuse would pop up out of nowhere, seeming like it was for no reason whatsoever, but sometimes it would come after I had filed another complaint, but that was just Baraga's staff retaliating against me, for me writing about them retaliating against me, with the overall aim & goal, to oppress & mistreat me, until I shut my mouth & surrender any right to protection & retaliating against me for me ever filing the complaint, one reason why is that they know, that in actually [sic] not even suppose to be at this facility of Baraga.

(Compl. at 3, Page ID#3.) Plaintiff, however, makes only a few specific allegations, after each of which he recites the text of the First, Fifth, Eighth and Fourteenth Amendments.

Plaintiff specifically complains that, on November 23, 2008, Defendants Bastian and Hemmila denied his requests for nail clippers and tissue for no reason. Plaintiff asserts that he needed the nail clippers because he wanted to remove some hard skin underneath his big toe, which allegedly caused him pain when he stepped. When Plaintiff filed a grievance, Bastian and Hemmila

allegedly lied about their conduct, stating that Plaintiff had not asked for nail clippers. In addition, Defendant Hemmila allegedly failed to provide Plaintiff with grievance forms.

Plaintiff next alleges that, on December 24, 2008, Defendant Beauchamp retaliated against him and denied him due process by failing to fully investigate his grievances against Bastian and a maintenance man.

On January 13, 2009, Defendant Hemmila allegedly retaliated against Plaintiff by not stopping at Plaintiff's cell when he was delivering food trays. Plaintiff states that he kicked at his door continuously. After delivering the other food trays, Hemmila stopped at Plaintiff's cell to explain that his food was not delivered because he had not been in the proper place to receive the tray. Plaintiff complains that Hemmila's conduct was retaliatory in violation of the First Amendment and violated the Eighth Amendment's prohibition on cruel and unusual punishment.

Plaintiff next alleges that, in May 2009, Defendant Food Service Director Barry began a five-month-long, food-tainting campaign against Plaintiff. Plaintiff contends that he could taste a strong detergent and/or chemical taste in his food. Plaintiff asserts that he was forced either to wash his food or not eat all of it, unless he wanted to ingest chemicals. He also alleges that Barry prepared Plaintiff's cakes, cookies and icing separately, in order to mix in the chemicals. Barry's conduct allegedly was part of the retaliatory and corrupt scheme at AMF. Plaintiff contends that he submitted a grievance about the alleged chemicals, which Defendant Dewar allegedly made "disappear," ostensibly in retaliation and in violation of Plaintiff's right to due process. (Compl., Page ID #10.)

On November 7, 2009, Defendant Charles allegedly "went inside my water closet & tampered with my sink water in such a way, that it stayed running all the time after that . . . ." (*Id.*,

Page ID#11.) Plaintiff states that he asked Charles to call a plumber, but Charles refused because the sink had just been fixed. Plaintiff filed two grievances about the issue, which he alleges Defendant Capello ignored. Plaintiff contends that Defendant Charles acted with a retaliatory motive, deprived him of due process, and subjected him to cruel and unusual punishment. On February 17, 2010, Charles ostensibly deprived him of unidentified hygiene items by not processing his request for indigent status, which prevented Plaintiff from placing an order with the store for a period of one month. Plaintiff claims that Charles again acted with a retaliatory motive and subjected him to cruel and unusual punishment.

On May 16, 2010, Plaintiff received a food tray that was missing the meat entree. In protest, Plaintiff began to keep his food trays, refusing to return them when ordered. The following day, May 17, 2010, Hemmila did not deliver to Plaintiff either his breakfast or lunch food loaf. Although he acknowledges that he continued to refuse to return his trays, Plaintiff complains that the actions were both retaliatory and violated the Eighth Amendment.

On June 3, 2010, Defendants Charles and Hemmila allegedly conspired to deprive Plaintiff of all of his meals "because of an incident that spanned from 6-2-10, dinner time the day before." (*Id.*, Page ID#14.) In protest of the June 2, 2010 incident, Plaintiff refused to return his food tray, and a misconduct ticket was written. Because he refused to return his food tray, Hemmila did not deliver breakfast and lunch, and Charles did not deliver dinner. Plaintiff alleges that Defendants' failure to deliver his meals was retaliatory and deprived him of his rights under the Eighth Amendment.

Plaintiff alleges that Defendant Warden Capello was "the ring leader of the Staff Corruption & Retaliation Operation, he either ordered his staff to inflict all sorts of mistreatments

upon me, or his allowing them to do it, which is basically the same thing, because I get the exact same results, a bunch of unrestrained staff, violating my Human Rights in any way they like." (*Id.*, Page ID#16.) Plaintiff alleges that, knowing that Plaintiff was preparing to file a lawsuit, Capello recently transferred Plaintiff from Unit 1 of the facility to Unit 3. Plaintiff alleges that Capello's motive in transferring Plaintiff was to make it appear that Capello was trying to stop the retaliation. However, Plaintiff alleges without further specifics that the retaliation was worse and that he was placed in a cell with even worse sink problems.

Plaintiff seeks declaratory and injunctive relief, including an order to transfer Plaintiff to another facility and release from prison.[1] He also seeks $1 million in damages.

II.     Frivolousness

Plaintiff alleges that Defendant Food Service Director Barry intentionally poisoned Plaintiff's – and only Plaintiff's – food, every day for five months, taking the trouble to bake separate desserts in order to do so. Plaintiff generally alleges that Barry's conduct was both retaliatory for Plaintiff's grievances against other officers and violated the Eighth Amendment.

An action may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the

---

[1] A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Barnes v. Lewis*, No. 93-5698, 1993 WL 515483, at *1 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, and (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. The Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.*, 490 U.S. at 327. "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

Plaintiff's allegations about Defendant Barry are wholly incredible. As Food Service Director, Barry was responsible for the oversight of food preparation for hundreds of prisoners, three times every day. It is ludicrous to suppose that Barry baked individual, poisoned desserts for Plaintiff and otherwise poisoned the food on only one tray, which he somehow managed to have delivered to Plaintiff, who was housed in administrative segregation. Moreover, the notion that Barry took it into his head to punish Plaintiff for filing grievances against officers who worked in Plaintiff's administrative segregation unit is wholly unsupported and not credible. The Court therefore concludes that, because Plaintiff's allegations against Barry are factually frivolous, the claims against him will be dismissed.

III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Conspiracy

Plaintiff alleges that each Defendants' actions should be held against all of the Defendants because they were part of a large conspiracy to deprive him of his rights. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. The few facts alleged in the complaint demonstrate that, over more than two years, different Defendants took a few actions that Plaintiff did not like. Each of those actions was typically separated by a period of months. Such allegations fall far short of stating a plausible claim for conspiracy. *Twombly*, 550 U.S. at 565.

### B. Supervisory Liability

Plaintiff asserts that Defendant Capello must have been involved in a conspiracy to deprive Plaintiff of his rights because he failed to prevent or correct the obviously unconstitutional conduct of his subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege facts showing that Defendant Capello engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

### C. No Right to Grievance

Plaintiff alleges that Defendants Beauchamp and Dewar deliberately failed to investigate the disappearance of several of his grievances. He also alleges that Defendant Hemmila did not provide him with grievance forms when Plaintiff requested them.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

In addition, even if Plaintiff had been improperly prevented from filing or pursuing a grievance, his right of access to the courts, *see, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977), to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. Because Plaintiff's only allegations against Beauchamp and Dewar are that they failed to provide him with grievance forms or lost his grievances, the Court finds that Plaintiff fails to state a claim against them.

### D. Eighth Amendment

Plaintiff contends that the remaining Defendants subjected him to cruel and unusual punishment when they refused to provide him nail clippers and tissue; prevented him from ordering unspecified items from the commissary; caused his sink to run water and failed to correct it; and failed to deliver his meals on a few occasions.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Allegations about temporary inconveniences, such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F.Supp.2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)); *but see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

Plaintiff's claim that he was forced to live in a cell containing a sink with a faucet that was allowed to drip or run falls far short of an essential need protected by the Eighth Amendment. In addition, not receiving a few meals during the course of a year-and-a-half are mere temporary inconveniences that did not create an objectively serious risk to Plaintiff's health or safety protected by the Eighth Amendment.[2] Similarly, the denial of nail clippers for two days and the denial of an opportunity to order unspecified hygiene items for one month are mere temporary inconveniences.

In sum, Plaintiff's allegations fail to state a claim for relief under the Eighth Amendment.

---

[2]The Court also observes that, according to Plaintiff's own allegations, he was denied food only on occasions when he was refusing to return his food tray. Plaintiff therefore cannot demonstrate that the Defendant officers acted with the requisite subjective intent to cause serious harm.

### E. Retaliation

Plaintiff contends that all of the alleged actions taken by the remaining Defendants Bastian, Hemmila and Charles were taken in retaliation for Plaintiff's having filed grievances against them or other officers. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff alleges that he filed or attempted to pursue various grievances against a variety of Defendants, including Defendants Bastian, Hemmila, and Charles. The Court therefore will assume that he has adequately alleged the first element of a retaliation claim.

Plaintiff however, cannot demonstrate either that the alleged conduct was sufficiently adverse or that the allegedly adverse actions were causally connected to Plaintiff's grievances. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted.

The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

To the extent that Plaintiff complains that Defendants Bastian and Hemmila denied him nail clippers for two days. Such a deprivation is not sufficiently adverse to deter a person of ordinary firmness from filing a grievance. Similarly, Plaintiff's allegation that Defendant Charles' "tampered" with Plaintiff's faucet, causing it to run, also falls short of demonstrating adverseness. Further, Defendants Hemmila and Charles' loss or destruction of grievances is not sufficiently adverse to support a retaliation claim because such conduct would render administrative remedies unavailable; such interference therefore cannot impair Plaintiff's right to file a lawsuit. *See Burgos v. Canino*, 358 F. App'x 302, 306-07) (delaying or denying a grievance does not amount to adverse action); *Nixon v. Sanders*, 243 F. App'x 197, 199 (8th Cir. 2007) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (prisoner's allegations that prison officials denied his requests for grievance forms could raise inference that he was prevented from utilizing prison's remedies, rendering the grievance process unavailable under § 1997e(a)); *see also Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (refusal to give prisoner grievance forms can render administrative grievance system unavailable); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (same); *Muhammad v. Gilmer Fed. Corr. Inst.*, No. 3:05-CV-91, 2007 WL 2815634, at *5 (N.D. W. Va. Sept. 25, 2007); *McDonald v. Schuster*, No. CV-02-1357-PHX-SRB, 2006 WL 411062, at *4 (D. Ariz. Feb. 16, 2006); *cf. Moore v. Sergent*, 22 F. App'x 472, 474 (6th Cir. 2001) (placement of a prisoner on modified grievance access does not constitute adverse action). In addition, Plaintiff's claim that Hemmila intentionally deprived him of an occasional meal in retaliation for filing grievances does not amount to adverse

action. *See Jackson v. Pelkola*, No. 2:08-cv-20, 2009 WL 6849445, at *3 (W.D. Mich. Oct. 29, 2009) (deprivation of a single meal is not adverse action).

Further, Plaintiff's allegations as to causation are wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Although in certain circumstances temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

In addition to being conclusory, the allegations that Defendant Bastian acted with a retaliatory motive to deny Plaintiff the use of nail clippers is at odds with the facts alleged by Plaintiff. Bastian's conduct occurred prior to the filing of any of the grievances discussed by Plaintiff. The filing of a grievance, therefore, could not have served as the motivation for Bastian's conduct.

Finally, Plaintiff's own admissions about his conduct on the dates Charles and Hemmila denied him meals undermine any inference that the actions were retaliatory. On one occasion, Plaintiff acknowledges that he was kicking the door continuously during meal delivery. On another occasion, he admits that the reason he did not receive his meals was that he refused to return his meal trays from the preceding meals. Conduct that violates prison policy does not support a claim of retaliation. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). In the face of such admitted facts, the existence of a retaliatory motive is simply not plausible within the meaning of FED. R. CIV. P. 8(a)(2). *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:    2/25/2011              */s/ R. Allan Edgar*
                                 R. Allan Edgar
                                 United States District Judge